228 So.2d 99 (1969)
JEFFERSON STORES, INC., a Delaware Corporation, Appellant,
v.
Jean CAUDELL, Appellee.
No. 69-305.
District Court of Appeal of Florida. Third District.
November 18, 1969.
Rehearing Denied December 5, 1969.
Stephens, Demos, Magill & Thornton, Miami, for appellant.
High, Stack & Davis and Robert A. Lazenby, Miami, for appellee.
Before BARKDULL, HENDRY and SWANN, JJ.
SWANN, Judge.
The defendant below, Jefferson Stores, Inc., appeals from a final judgment rendered on a jury verdict. Jean Caudell, plaintiff, recovered the final judgment for compensatory and punitive damages in her suit for false imprisonment, assault and battery, and personal injuries.
Defendant argues that the trial court erred in denying its motion for summary judgment and motion for directed verdict. It claims that these motions were proper and should have been granted on the authority of § 811.022, Fla. Stat., F.S.A., which provides:
"(1) A peace officer, or a merchant, or a merchant's employee who has probable cause for believing that goods held for sale by the merchant have been unlawfully taken by a person and that he can recover them by taking the person into custody, may, for the purpose of attempting to effect such recovery, take the person into custody and detain him in a reasonable manner for reasonable length of time. Such taking into custody and detention by a peace officer, merchant, or merchant's employee shall not render such police officer, merchant, or merchant's employee criminally or civilly liable for false arrest, false imprisonment, or unlawful detention."
The testimony produced at trial was conflicting in certain respects. The jury resolved the conflicting testimony in favor of the plaintiff, and on appeal we are required to view the facts in a light most favorable to her. See Great A. & P. Tea Co. v. Federal Detective Agency, Fla.App. 1963, 157 So.2d 148; F.W. Woolworth Company v. Stevens, Fla.App. 1963, 154 So.2d 201; and Prince Michael Corp. v. Zucker, Fla.App. 1962, 147 So.2d 332.
The facts reviewed in that light are taken from plaintiff's brief and reveal that
"On November 5, 1967, Jean Caudell, a frequent shopper at Jefferson Stores, *100 was in the Jefferson's Store located at S.W. 104th Street and South U.S. # 1. She had gone to the store with her two children for the purpose of doing early Christmas shopping. Because she was an employee and department manager at Jackson Byron's Department Store, she would not have the opportunity as Christmas drew nearer.
Their arrival at defendant's store was close to noon so she and the kids headed immediately for the snack bar to have lunch. The plaintiff passed the notions counter and noticed a large fluffy key ring about the size of a tennis ball. She removed it from the rack and carried it with her to the snack bar. She did nothing in the least way suspicious at or around the notions counter. She had much more shopping to do and since the cash registers are in the extreme opposite end of the store she did not pay for the item at that time. While at the lunch counter, she decided to transfer the loose keys from her pocket book to the fluffy key chain so as to occupy her time while the children ate their lunches. She placed the price tag from the key chain in her package of cigarettes between the package and the cellophane as a reminder to pay, she being a very heavy smoker and usually having her cigarettes in her hand. All of this time there was a waitress behind the counter, a lady to her left and another woman store employee to her right, not to mention Mr. McGovern, a security guard of the store who was also at the counter. She made no attempt to destroy the price tag. In the presence of the waitress she told her children as well as the lady seated close by, "This wouldn't get lost," as she was transferring the keys to the bulky key chain. This activity lasted for a period of five to ten minutes. The plaintiff even remarked to the waitress how big the key chain was and how difficult it would be to lose it. The plaintiff after telling her children to remind her to pay for the key chain dropped it into the top of a big open purse in the shopping basket. She then proceeded to various parts of the store to continue her shopping. In all she shopped for close to two and a half hours and was running behind schedule as she got to the checkout lane. The plaintiff estimates that she paid about $38.40 at the main checkout counter, $25.00 at the jewelry counter and about $6.00 at the drug counter. She had an entire grocery cart full of items. At least two of the store's security men had her under surveillance the entire time she had been shopping. During that time she had done absolutely nothing which was in any way suspicious. None of the security officers took the time during that two and a half hours to talk to the girl behind the soda fountain before apprehending the plaintiff.
When the plaintiff was two to four feet outside of the defendant's store, a man's arm came shooting through her arm, pulling her around and causing the package containing all of her purchases to drop. At this time pain went shooting down both legs. This man was Mr. McGovern, a Jefferson Stores security man. Another security man, Mr. Bugg, then put his hand on her shoulder and directed her back into the store. They told her she would be arrested and her children taken into custody if she did not sign a paper. McGovern told her that she was not going anyplace if she did not sign the paper, which in essence was a joint admission of shoplifting and a release. According to Mr. Bugg the only reason for going through all the apprehension, detention and threats, was to get a release for Jeffersons. During this time the plaintiff was upset and was in agony with her back which was weaker than the ordinary back having undergone three previous operative procedures. Only after she had signed the instrument was she allowed to leave. She was not allowed to pay for the key ring and leave because that is not the policy of the store. A release must be *101 signed before they can leave. Because of the re-injury to her back the plaintiff had to leave her employment, undergo medical treatment and end up with additional permanent disability."
Under these facts the employees of the defendant might have had probable cause to believe a larceny had been committed. Cf. Rothstein v. Jackson's of Coral Gables, Inc., Fla.App. 1961, 133 So.2d 331. They also had a right to "take the person into custody and detain him in a reasonable manner for a reasonable length of time." Under the disputed and conflicting facts herein it was for a jury to determine whether the taking of the plaintiff into custody and her detention were done in a reasonable manner and whether she was detained for a reasonable length of time. The denial of the motion for summary judgment and directed verdict were, therefore, proper. Cf. Wilde v. Schwegmann Bros. Giant Supermarkets, Inc., La. App. 1964, 160 So.2d 839.
The defendant asserts error by the trial court in submitting the issue of punitive damages to the jury and in the denial of its motion for a remittitur of that portion of the verdict relating to the assessment of punitive damages.
There was substantial, competent evidence here under which the issue of punitive damages was properly submitted to the jury. See Anderson v. Maddox, Fla. 1953, 65 So.2d 299; Farish v. Smoot, Fla. 1952, 58 So.2d 534; Wrains v. Rose, Fla.App. 1965, 175 So.2d 75; Doral Country Club, Inc. v. Lingren Plumbing Co., Fla.App. 1965, 175 So.2d 570; and Bryson v. Swank, Fla.App. 1964, 166 So.2d 833.
We have considered the defendant's other points for reversal and find them to be without merit.
The final judgment is
Affirmed.