415 So.2d 1292 (1982)
John W. PHELAN and David J. Teer, Appellants,
v.
CITY OF CORAL GABLES, George Cheiffi, the Continental Casualty Company and Norman Morris, Appellees.
No. 81-1311.
District Court of Appeal of Florida, Third District.
June 1, 1982.
Rehearing Denied July 23, 1982.
*1293 Corlett, Merritt, Killian & Sikes and Gerald E. Rosser, Miami, for appellants.
Peter G. Stassun, Coral Gables, Steven R. Berger, Underwood, Gillis, Karcher, Reinert & Valle and Thomas R. Trompeter, Miami, for appellees.
Before HENDRY, DANIEL S. PEARSON and FERGUSON, JJ.
HENDRY, Judge.
Plaintiffs-appellants John Phelan and David Teer appeal an adverse summary judgment entered in their suit for false arrest and imprisonment and malicious prosecution. The appellees are Norman Morris, owner of a boat Phelan and Teer were charged with looting, George Cheiffi, a detective employed by the City of Coral Gables Police Department, the City of Coral Gables, and Continental Casualty, the City's insurer.
The facts culminating in the instant action are as follows. While checking on Teer's boat in Coco Plum canal following Hurricane David, appellants observed a partially submerged Hatteras 36. Phelan called the Coast Guard to ask whether they might attempt salvage and was told they could. After 7:30 that evening, Phelan, Teer, Phelan's son and several other boys went to check on the boat. While the boys were removing equipment from the bridge of the Hatteras, three men on the canal bank, Morris, John Griffin, and one of Griffin's employees, threw rocks and yelled at them to stop. Griffin, hired to salvage the boat, told appellants that he was the owner's representative and they were stealing. At this point, appellants and the boys covered the identification numbers on their boat and took off down the canal with the equipment they had removed. Griffin and his employee pursued in a boat that motored by. Appellants dropped off the boys and equipment at Phelan's house and continued up the canal.
Officer Richards of the Coral Gables Police Department, responding to a call involving two boats speeding down the waterway, observed Phelan's boat without running lights, and a boat containing an occupant hollering "thief." Richards stopped the two boats and spoke with the men. He was suspicious of Phelan's story since he did not believe salvage was lawful within territorial waters, and appellants both had alcohol on their breath. Officer Richards then retrieved the equipment from Phelan's house.
The next day, Detective Cheiffi was assigned to the case and briefed by Officer Richards. He contacted Morris and took his statement and spoke with Griffin, who confirmed Morris' version of the events. Detective Cheiffi attempted to obtain statements from Phelan and Teer, but they did not appear as scheduled and failed to set up another appointment. Detective Cheiffi also contacted the Coast Guard and its attorney who stated that no statutes would allow salvage in this situation. They also indicated that they were unaware of Phelan's alleged telephone call, and would *1294 check into it, but their employees were under orders not to give legal advice and if anyone had told Phelan he could salvage, it was an unauthorized statement. An independent witness, one George Cubberly, came forward with a statement concerning the incident. He stated that he had gone by the Hatteras with his wife and asked appellants if they were in need of help. One of the two men told the Cubberly's that they owned the boat, and their bilge pump was broken, but that they would take care of it.
Detective Cheiffi and Morris decided to turn the matter over to the State Attorney's office for determination of whether criminal charges should be filed. Morris signed a statement and an assistant state attorney advised them there was probable cause to obtain arrest warrants for grand theft. After the warrants were issued, but prior to their arrest, appellants came forward and gave statements to Detective Cheiffi which were found to contain several inconsistencies. Detective Cheiffi was then able to review the Coast Guard tape of Phelan's phone call. The tape indicated that while Phelan did receive limited permission to salvage, he had not been responsive to the procedure he was advised to follow. At a subsequent pretrial conference with the State Attorney's office, Detective Cheiffi was advised that there was still probable cause to pursue the case.
Before trial, the case was dismissed for lack of criminal intent. Appellants then filed this suit against the City of Coral Gables for false arrest and imprisonment, and against Morris, Cheiffi, and the city for malicious prosecution. Continental Casualty was joined as insurer for the City of Coral Gables and its employee, Detective Cheiffi. The court below granted appellees' motions for summary judgment. Appellants seek review of that order, challenging the summary judgment only on the malicious prosecution claim.[1]
The plaintiff in a malicious prosecution action is required to prove, by a preponderance of competent evidence, six essential elements: (1) a criminal proceeding was commenced or continued against the plaintiff; (2) the defendant commenced or caused the commencement of such proceeding; (3) the criminal proceeding had a bona fide termination in plaintiff's favor; (4) there was no probable cause for the commencement of the criminal proceeding; (5) the defendant acted with malice; (6) the plaintiff suffered damage. Ward v. Allen, 152 Fla. 82, 11 So.2d 193 (1942); Gatto v. Publix Supermarket, Inc., 387 So.2d 377 (Fla. 3d DCA 1980); Applestein v. Preston, 335 So.2d 604 (Fla. 3d DCA), cert. denied, 341 So.2d 1084 (Fla. 1976). Failure to establish any one element will destroy the cause of action. Weissman v. K-Mart Corp., 396 So.2d 1164 (Fla. 3d DCA 1981). In the present case there is no dispute that the first three elements and the sixth were demonstrated. The only issue is whether absence of probable cause and the existence of malice were shown.
The determinative factor as to the existence of probable cause as an element of a malicious prosecution action is whether the suit was brought without reasonable prospect of success. Acquittal or dismissal of the charges, as here, does not by itself establish improbability of the suit. Weissman v. K-Mart Corp., supra. Where no evidence is presented to establish that the criminal charges lacked a probable foundation, summary judgment is proper. Fee, Parker & Lloyd, P.A. v. Sullivan, 379 So.2d 412 (Fla. 4th DCA), cert. denied, 388 So.2d 1119 (Fla. 1980); Clements v. Eastern Air Lines, Inc., 183 So.2d 264 (Fla. 3d DCA), cert. denied, 192 So.2d 486 (Fla. 1966).
Guided by this standard, and viewing the facts most favorably to appellants, the pleadings, depositions and interrogatories filed in this case were legally insufficient to establish the absence of *1295 probable cause, see City of Pensacola v. Owens, 369 So.2d 328 (Fla. 1979); Duncan v. Germaine, 330 So.2d 479 (Fla. 4th DCA 1976), and the trial court properly granted appellees' motions for summary judgment. The uncontroverted evidence demonstrates that appellants removed equipment from Morris' boat, told passersby that they owned the boat, and covered up their identification numbers and fled the scene without running lights when challenged. Statements made by Morris and Griffin as well as an independent witness, coupled with information given by Coast Guard officials and the determination by the State Attorney's office that probable cause existed for issuance of arrest warrants, provided a reasonable suspicion that appellants had committed a crime. Attempts to investigate appellants' explanation of the events were frustrated by their own failure to appear and give statements until after arrest warrants were issued. Although the filing of an information by the State Attorney in a criminal prosecution does not give rise to a presumption of probable cause, such a determination does constitute evidence of reasonable grounds for the prosecution. Colonial Stores, Inc. v. Scarbrough, 355 So.2d 1181 (Fla. 1978).[2]
Aside from contending that appellees should have listened to the Coast Guard tape prior to filing charges, a detail which is not significant in light of the fact that Detective Cheiffi did contact the Coast Guard and was told they were unaware of the call, salvage was not permissible, and any such advice was unauthorized, appellants have presented no evidence to establish the absence of probable cause.[3]
In view of appellees' unrebutted showing that there was probable cause to initiate criminal proceedings, summary judgment was properly entered. We therefore need not determine whether malice, the final element of a malicious prosecution action, has been shown to exist.
Affirmed.
NOTES
[1] Appellee Morris initially appealed from the trial court's determination that his marine policy with Insurance Company of North America did not afford coverage for a malicious prosecution suit, case number 81-1318, which was consolidated with the instant appeal. This appeal was later dismissed.
[2] See also Hudson v. Dykes, 402 So.2d 491 (Fla. 1st DCA 1981) (trial court's finding that defendant in malicious prosecution action had probable cause to believe a crime had been committed when he reported his beliefs to the State Attorney's office would be a complete defense), see generally Pokorny v. First Federal Savings & Loan Ass'n, 382 So.2d 678 (Fla. 1980) (private citizen may not be held liable for false imprisonment where he neither actually detained another nor instigated the other's arrest by law enforcement officers; if the citizen makes honest, good-faith mistake in reporting incident, mere fact that his communication to officer may have caused victim's arrest does not make him liable when he did not in fact request detention).
[3] We also note that the State Attorney's office determined the evidence was sufficient to prosecute even after listening to the tape.